Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Apelada<br><br><br>V.<br><br><br>SHIRLEY VERA BARRETO<br><br>Apelante | KLAN202200516 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Núm.:<br>A VI2021G0004<br>A LA2021G0019<br>A LA2021G0020<br>A LE2020G0143<br>(503A)<br><br>Sobre:<br>ART. 93A 1ER GRADO; ART. 6.05 Y ART. 6.14A L.A., ART. 3.1 LEY 54 |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Adames Soto y la Juez Lotti Rodríguez.[1]

Lotti Rodríguez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 19 de mayo de 2025.

El 1 de julio de 2022, la apelante, Shirley Vera Barreto, presentó un *Escrito de Apelación.* La apelante solicita que revoquemos las sentencias emitidas el 6 de junio de 2022, luego de que un jurado emitiera un veredicto unánime de culpabilidad por el delito de asesinato en primer grado, Art. 93 del Código Penal de Puerto Rico de 2012,[2] y de violar los Arts. 6.05 y 6.14 de la Ley de Armas de Puerto Rico de 2020.[3] El Procurador General presentó su oposición al recurso el 23 de enero de 2024.

Los hechos que anteceden este recurso son los siguientes.

**I**

---

[1] Conforme la OATA-2025-069 del 7 de mayo de 2025, se asignó a la Juez Glorianne M. Lotti Rodríguez, en sustitución del Hon. Abelardo Bermúdez Torres.
[2] 33 LPRA sec. 5142.
[3] 25 LPRA sec. 466d, 466m.

Número Identificador

SEN2025 _____

El Ministerio Fiscal presentó acusaciones contra la apelante por el delito de asesinato en primer grado, por usar un arma de fuego sin licencia y disparar con un arma de fuego. Según las acusaciones, el 2 de diciembre de 2020 la apelante, Shirley Vera Barreto le disparó a su esposo, Alvin Quiñones Acevedo, con un arma de fuego y le ocasionó la muerte de forma ilegal, voluntaria, criminal a propósito y con conocimiento. Celebrado el juicio ante un jurado, el jurado emitió un veredicto unánime de culpabilidad por todos los delitos por los que fue acusada. La apelante fue sentenciada el 6 de junio de 2022 a noventa y nueve (99) años de prisión por el delito de asesinato en primer grado, veinte (20) años de prisión por violar el Art. 6.05,[4] y cinco (5) años de prisión por violar el Art. 6.14.[5]

La apelante presentó este recurso en el que alega que el Tribunal de Primera Instancia:

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO BRINDAR LAS INSTRUCCIONES SOLICITADAS AL JURADO SOBRE POSESIÓN INCIDENTAL DE UN ARMA DE FUEGO EN EL CASO DE EPÍGRAFE.**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO EMITIR INSTRUCCIONES SOBRE LOS DELITOS MENORES INCLUIDOS.**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA TRAS HABER CONTINUADO EL JUICIO EN SU FONDO A PESAR DE QUE UNO DE LOS ABOGADOS DE EPÍGRAFE PRESENTÓ RAZÓN JUSTIFICADA ANTE SU INCOMPARECENCIA PRIVÁNDOLE A LA ACUSADA DE SU DEBIDO PROCESO DE LEY Y UNA ADECUADA REPRESENTACIÓN LEGAL.**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR SIN LUGAR LA MOCIÓN SOLICITANDO INVESTIGAR AL JURADO QUE EMITIERA EL VEREDICTO EN EL CASO DE EPÍGRAFE TRAS RECIBIR INFORMACIÓN DE LOS MIEMBROS DE LA PRENSA Y DEL PROPIO MINISTERIO PÚBLICO A LOS EFECTOS DE QUE AL MENOS UNO DE LOS MIEMBROS DEL JURADO MOSTRÓ INCONFORMIDAD CON EL VEREDICTO EN EL QUE**

---

[4] *Id.* sec. 466d.
[5] *Id.* sec. 466m.

**SE BASÓ LA SENTENCIA, PRIVANDO A LA ACUSADA DE UN JUICIO JUSTO E IMPARCIAL.**

**ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL CELEBRAR EL JUICIO EN SU FONDO SIN HABER PERMITIDO POR MEDIO DE LA REGLA 95 DE PROCEDIMIENTO CRIMINAL, ADQUIRIR EL EXPEDIENTE DE QUERELLAS ADMINISTRATIVAS DEL OCCISO, A PESAR DE QUE SE ADELANTÓ QUE SIMILAR A LA VISTA PRELIMINAR EL CASO DE EPÍGRAFE ESTARÍA BASADO EN PRUEBA DE REPUTACIÓN.**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA TRAS NO PERMITIR TRAER COMO PRUEBA DE REFUTACIÓN UN TESTIGO PERITO QUE PRETENDÍA CONTRARRESTAR LO QUE ALEGÓ EL PATÓLOGO PRESENTADO POR EL MINISTERIO PÚBLICO, PRIVANDO A LA ACUSADA DE UN JUICIO JUSTO E IMPARCIAL.**

## II

### A. Asesinato en primer grado

El Art. 92 del Código Penal de 2012,[6] define el asesinato como el dar muerte a un ser humano **a propósito, con conocimiento o temerariamente.** Los grados del asesinato están establecidos en el Art. 93.[7] Según lo dispuesto en el inciso (a), el asesinato en primer grado se comete cuando la muerte es perpetrada por medio de veneno, acecho, tortura **o a propósito o con conocimiento.**

Una persona actúa a propósito con relación a un resultado cuando su objetivo consciente es la producción de dicho resultado. Igualmente actúa a propósito con relación a una circunstancia, cuando cree que esa circunstancia existe. Por otro lado, una persona actúa con conocimiento con relación a un resultado, cuando está consciente de que la producción de ese resultado es una consecuencia prácticamente segura de su conducta. Del mismo modo actúa con conocimiento con relación a un elemento de circunstancia, cuando está consciente de que la existencia de

---

[6] 33 LPRA sec. 5141.
[7] *Id.* sec. 5142.

esa circunstancia es prácticamente segura. Una persona actúa temerariamente cuando está consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia que la ley prohíbe. Art. 22 del Código Penal de 2012.[8]

## B. Quantum de prueba

La Sec. II del Art ll de la Constitución de Puerto Rico, LPRA Tomo 1, estable el derecho del acusado en todo proceso criminal a la presunción de inocencia, que solo será rebatida mediante la presentación de evidencia que establezca su culpabilidad más allá de duda razonable. El Estado tiene el peso de la prueba, por lo que le corresponde presentar evidencia sobre la existencia de todos los elementos del delito y su conexión con el acusado.[9] Su trabajo no se limita a probar que un ser humano fue asesinado, ya que tiene que demostrar que fue el acusado quien lo hizo. No obstante, no tiene que establecer la culpabilidad del acusado con certeza matemática. El Estado tiene que presentar prueba satisfactoria y suficiente en derecho, que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido.[10]

La determinación de que se incumplió con el quantum de prueba más allá de duda razonable es una cuestión de raciocinio, producto de todos los elementos del juicio del caso. La duda razonable que impide rebatir la presunción de inocencia no es una meramente especulativa o imaginaria o cualquiera posible, se trata de la insatisfacción con la prueba, conocida como duda razonable.[11]

---

[8] 33 LPRA § 5035(1), (2), (3).
[9] *Pueblo* v. *Toro Martínez,* 200 DPR 834 (2018).
[10] *Id.* en las págs. 855-856.
[11] *Id.* en la pág. 856.

Nuestro esquema probatorio este revestido por un manto de deferencia hacia las determinaciones de los juzgadores de primera instancia sobre la prueba testifical ante su consideración. La deferencia está más que justificada, cuando el planteamiento sobre la insuficiencia de la prueba se reduce a la credibilidad de los testigos, porque existe un principio inquebrantable de que es el foro sentenciador el que se encuentra en mejor posición para hacer esa evaluación y adjudicación.[12]

El juez sentenciador es ante quien deponen los testigos, tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. Como regla general, un tribunal revisor tiene vedado intervenir con la adjudicación de credibilidad de los testigos. El foro apelativo no puede sustituir las determinaciones de hecho que el foro primario hizo, luego de escuchar, ponderar, valorar y determinar si cierto testimonio es creíble. La revisión debe estar guiada por parámetros estrictos. Los foros apelativos solo intervendrán y descartarán la credibilidad que el juzgador adjudicó a los testigos, cuando actuó movido por pasión, prejuicio parcialidad o incurrió en un error manifiesto en su adjudicación. Al revisar una determinación sobre una conducta criminal debemos tener presente que la apreciación de la prueba corresponde al foro sentenciador, salvo que se deba revocar porque surgió de una valoración apasionada, prejuiciada o parcializada, o el dictamen es manifiestamente erróneo.[13]

Un juzgador incurre en pasión, prejuicio o parcialidad, cuando actúa movido por inclinaciones personales. Tales

---

[12] *Id.* en la pág. 857.
[13] *Id.* en las págs. 857-858.

motivaciones tienen que llevar al juzgador a adoptar posiciones de preferencia o rechazo hacia las partes o sus causas sin admitir cuestionamientos y sin importar la prueba recibida en sala e incluso sin que se someta prueba alguna. Las conclusiones del foro revisado son erróneas, cuando el foro revisor analiza la totalidad de la prueba y queda convencido de que sus conclusiones confligen con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. El foro primario incurre en un error manifiesto, cuando su apreciación de la prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble.[14]

El Estado no tiene que presentar un número específico de testigos para probar la culpabilidad de un acusado más allá de duda razonable. El juzgador tampoco está obligado a decidir de acuerdo con las declaraciones de cualquier cantidad de testigos, si no le convencen frente a un número menor u otra evidencia que le resulte más convincente.[15]

El foro revisor se encuentra en igual posición que el tribunal sentenciador para evaluar las conclusiones de hechos fundamentadas en prueba documental o pericial. El Tribunal de Apelaciones tiene la facultad de adoptar su propio criterio en la apreciación y evaluación de la prueba pericial y para descartarla, aunque resulte técnicamente correcta.[16]

### C. Conversaciones en el Estrado

El apelante en *Pueblo* v. *Ortiz Colón,* 207 DPR 100, 105 (2021), solicitó un nuevo juicio. Su reclamo se basó en que: (1) la transcripción estaba incompleta porque no incluyó las conferencias en el estrado y (2) no podía utilizar la grabación del juicio para completarla, porque las conversaciones en el estrado no

---

[14] *Id.* en la pág. 859.
[15] *Id.* en las págs. 859-860.
[16] *Santiago Ortiz* v. *Real Legacy et al,* 206 DPR 194, 219 (2021).

se entendían o no podían escucharse. **El Tribunal Supremo de Puerto Rico redujo la controversia a resolver si para determinar que la transcripción de un juicio está completa es necesario incluir las conversaciones en el estrado.**

La decisión advierte que la transcripción o regrabación de la prueba oral solo concierne a las expresiones hechas en el récord. El tribunal enfatizó que la transcripción no incluye las conversaciones en el estrado, porque así está dispuesto claramente en la Regla 28g para la Administración del Tribunal de Primera Instancia.[17] Según se establece en la regla citada, la transcripción o regrabación de la prueba oral se limitará a los testimonios, objeciones de las partes y expresiones del tribunal producidas durante la presentación de prueba. **Sin embargo, quedarán excluidos los informes, argumentos de las partes, las instrucciones al jurado y las objeciones a estas, el acto de dictar sentencia y cualquier vista celebrada posterior al fallo de culpabilidad. No obstante, la parte interesada podrá designarlos y solicitar al Tribunal Supremo o de Apelaciones que los autorice como materia relevante al recurso**.[18]

El propósito de las conferencias y conversaciones en el estrado es proveerles la oportunidad a las partes y al juez de tener una conversación privada y confidencial en la que pueden llegar libremente a entendidos. Las conferencias y conversaciones en el estrado permiten que el juez y las partes puedan hablar sin las formalidades de hacerlo en corte abierta para récord, y sin necesidad de desalojar a los testigos o al Jurado. No obstante, no existe una camisa de fuerza que impida exponer en corte abierta las conversaciones y objeciones hechas en el estrado para

---

[17] 4 LPRA Ap. II-B.
[18] *Pueblo* v. *Ortiz Colon, supra,* págs. 110-111.

garantizar que el récord contenga toda la información útil para una apelación.[19]

**La dificultad para escuchar las conversaciones en el estrado o en corte abierta no es razón para conceder automáticamente un nuevo juicio**. Quien lo **alega tiene que demostrar un perjuicio específico que impide perfeccionar la apelación.** Las conversaciones en el estrado no fueron concebidas para ser grabadas o para que el jurado las escuche, porque su propósito es que las partes y el juez asuntos procesales y tramiten el caso sin que conste en el récord. Además, proveen al juez la oportunidad de mantener el control en sala y preservar el decoro de los procedimientos.[20] Su confidencialidad solo se quebranta cuando: (1) el juez, el Ministerio Público o la defensa, exponen en sala abierta, el interés de verter para el récord lo previamente conversado en el estrado o (2) el juez autoriza que se discutan en el estrado los fundamentos de una objeción y la parte objetante o cualquiera interesada solicita la grabación en el récord, y el tribunal lo permite en el ejercicio de su discreción.[21]

En *Pueblo v. Ortiz Colón, supra,* nuestro más Alto Foro judicial local denegó la solicitud de nuevo juicio porque: (1) las conversaciones en el estrado no tienen que estar incluidas en la transcripción, (2) el apelante no planteó en corte abierta su interés de preservar las discusiones en el estrado, (3) el apelante no pidió que se grabaran en el récord los fundamentos de las objeciones discutidas en el estrado.

### D. Instrucciones al Jurado

El tribunal tiene que impartir al jurado instrucciones claras, correctas claras, precisas y lógicas. La Regla 137 de Procedimiento

---

[19] *Id.* en las págs. 111-113.
[20] *Id.* en las págs. 120-121.
[21] *Id.* en la pág. 117.

Criminal establece que las instrucciones deben incluir un resumen de la evidencia y una exposición de todas las cuestiones de derecho necesarias para la información al jurado.[22] Nuestro Tribunal Supremo adoptó un manual de instrucciones al jurado para hacer posible esa encomienda. Aunque su utilización es discrecional, es una buena práctica hacerlo, para disminuir las posibilidades de error en las instrucciones y lograr uniformidad en la administración de la justicia criminal. Las instrucciones impartidas conforme al manual están cobijadas por una presunción de corrección. Por esa razón, quien las impugna debe demostrar afirmativamente que son erróneas. No obstante, para determinar su corrección tienen que ser consideradas en su totalidad y no por frases aisladas.[23]

### E. Representación Legal Adecuada

El derecho de los acusados a representación legal en los procesos criminales está consagrado en la Sexta Enmienda de la Constitución de Estados Unidos, que aplica a los estados mediante la Decimocuarta Enmienda y en la Sec. 11 de la Carta de Derechos de la Constitución de Puerto Rico.[24] Como parte de este derecho es necesario que la representación legal sea adecuada y efectiva. El derecho a una representación legal adecuada es reconocido en la etapa investigativa, cuando el proceso adquiere carácter acusatorio, en el acto de lectura de acusación, durante el juicio, al dictarse sentencia y en la fase apelativa.[25] Las situaciones personales, problemas matrimoniales o familiares, o padecimientos de salud no justifican desatender las responsabilidades éticas que rigen el ejercicio de la abogacía en nuestra jurisdicción.[26]

---

[22] 34 LPRA Ap. II, R. 137.
[23] *Pueblo* v. *Colón González,* 209 DPR 967, 987-988 (2022).
[24] Art. II, Sec. 11, Const. PR, LPRA, Tomo I.
[25] *Pueblo* v. *Hernández Doble,* 210 DPR 850, 861 (2022).
[26] *In re Sánchez Pérez,* 210 DPR 235, 263 (2022).

Nuestro Tribunal Supremo ha resuelto que el derecho a una representación legal adecuada se viola cuando: (1) el abogado es incompetente para la tarea que se le asigna, (2) como cuestión de hecho la labor desplegada demuestra su inefectividad, (3) existe un potencial o actual conflicto de intereses para el abogado, **(4) las reglas o actuaciones del tribunal constituyen una limitación irrazonable al derecho a tener una adecuada representación legal**.[27] El perjuicio sufrido por no tener la falta de representación legal adecuada tiene que ser sustancial, al punto de que el resultado del juicio pudo ser distinto.[28]

### F. Regla 95 de Procedimiento Criminal

Nuestra Constitución garantiza los derechos de todo acusado a preparar adecuadamente su defensa y de toda persona a un debido proceso de ley como condición previa a ser privado de su libertad.[29] El derecho a obtener la evidencia que le favorezca, a través del descubrimiento de prueba, es parte fundamental del precepto constitucional a una defensa adecuada. El Art. II, Sec. 7 de la Const. PR, LPRA, Tomo I, establece el derecho de toda persona a un debido proceso de ley como condición previa a ser privado de su libertad. El descubrimiento de prueba es consustancial con el derecho de todo acusado a defenderse adecuadamente en un proceso criminal.[30]

El tribunal determinará cómo se realizará el descubrimiento de prueba, establecerá los términos y condiciones que considere justos y necesarios y garantizará un procedimiento conducente a la presentación de evidencia adecuada y pertinente a la controversia de hechos. La función del descubrimiento de prueba es evitar hasta donde sea posible que la sorpresa y la ocultación oscurezcan

---

[27] *Pueblo v. Hernández Doble, supra*, pág. 860.
[28] *Id.*
[29] Art. II, Sec. 11 Const. PR, LPRA, Tomo I.
[30] *Pueblo* v. *Rodríguez González,* 202 DPR 258, 269-270 (2019).

e impidan la búsqueda de la verdad.[31] La facultad del acusado para requerir descubrimiento de prueba no es absoluta, ya que se rige por las Reglas de Procedimiento Criminal en un contexto práctico. La cláusula constitucional del debido proceso de ley no debe tomarse de manera liviana. El acusado no tiene las puertas abiertas para descubrir prueba sobre cualquier tipo de material o información.[32]

La Regla 95 de Procedimiento Criminal regula el descubrimiento de prueba al Estado. El acusado podrá solicitar el descubrimiento de prueba en cualquier momento después de la acusación o denuncia y en el término prescrito para hacerlo. El tribunal ordenará al Ministerio Fiscal, cualquier agencia o instrumentalidad pública que permita al acusado inspeccionar, copiar o fotocopiar el material o información en su posesión. La Regla 95 (a) contiene una lista con el material e información sujeto al descubrimiento de prueba. La lista es la siguiente:

(1) Cualquier declaración jurada que el Ministerio Fiscal tenga del acusado.

(2) Cualquier declaración jurada de los testigos de cargo que hayan declarado en la vista para la determinación de causa probable para el arresto o citación en la vista preliminar en el juicio o que fueron renunciados por el Ministerio Fiscal y los récords de convicciones criminales previas de estos.

(3) Cualquier resultado o informe de exámenes físicos, o mentales y de experimentos, o pruebas científicas que sea relevante para preparar adecuadamente la defensa del acusado o que vaya a ser utilizado en el juicio por el Ministerio Fiscal.

(4) Cualquier libro, papel, documento, fotografía, objeto tangible, estructura o lugar que sea relevante para preparar adecuadamente la defensa del acusado que el Ministerio Fiscal se propone utilizar en el juicio o que fue obtenido del acusado o perteneciera al acusado.

---

[31] *Id.* en la pág. 272.
[32] *Pueblo* v. *Sanders Cordero,* 199 DPR 827, 835 (2018).

(5) El récord de convicciones criminales previas del acusado.

(6) Cualquier informe preparado por agentes de la Policía en relación con las causas seguidas contra el acusado que sea relevante para preparar adecuadamente la defensa del acusado.

**La Regla 95 (e) de Procedimiento Criminal establece expresamente que la solicitud de "toda información y/o material que no esté enumerado en esta regla, deberá venir acompañado de una explicación sobre la necesidad o pertinencia que tiene el mismo para la defensa del acusado".**[33]

### G. Pertinencia de la Prueba

La admisibilidad de la evidencia está sujeta al requisito de pertinencia. Los tribunales no admiten evidencia que no sea pertinente. La Regla 401 de Evidencia,[34] define evidencia pertinente como aquella que haga más o menos probable un hecho que tiene consecuencias para la adjudicación de la acción incluyendo aquella que sirva para impugnar o sostener la credibilidad de una persona o testigo declarante.

### H. Veredicto del Jurado

La Sexta Enmienda de la Constitución de Estados Unidos y la Sección II del Art. II de la Constitución de Puerto Rico garantizan el derecho de toda persona acusada de un delito grave a ser juzgado por un jurado imparcial.[35]

Nuestro ordenamiento jurídico presume que los deberes de un jurado se han cumplido con regularidad. No obstante, esa presunción puede rebatirse con prueba que demuestre la irregularidad del procedimiento.[36] El veredicto no puede alterarse por indebida presión o influencia al jurado en ausencia de evidencia prima facie de que un elemento extraño permitió la

---

[33] 34 LPRA Ap. II, R. 95; *Rodríguez González, supra,* págs. 271-272.
[34] 32 LPRA Ap. VI, R. 401.
[35] *Pueblo* v. *Centeno,* 208 DPR 1, 10-11 (2021).
[36] *Pueblo* v. *Santiago Acosta,* 121 DPR 727, 738-739 (1988).

decisión de mayoría. La confidencialidad del proceso deliberativo cede ante la existencia de evidencia prima facie de una anormalidad que afectó seriamente la realización de la justicia y el esclarecimiento de la verdad. Al acusado le compete rebatir la presunción de que el jurado basó su veredicto en la prueba y no en hechos extraños o bajo indebida influencia o presión. El veredicto del jurado no puede atacarse bajo la premisa de prejuicio implícito, ya que debe demostrase un perjuicio real. El acusado que alegue error perjudicial tiene que demostrar que la decisión o actuación objetada tuvo impacto y relieve perceptible en la objetividad del juicio.[37]

La Regla 145 de Procedimiento Criminal,[38] impone al tribunal la obligación de preguntarle al presidente del Jurado si el veredicto que se entregó por escrito es el del jurado y cuántos de sus miembros votaron en favor del mismo. El veredicto será aceptado por el tribunal y leído por el secretario, si el presidente responde en la afirmativa y es conforme a la ley.

### I. Prueba de Refutación

Según lo establecido en la Regla 607 (e) de Evidencia, el Ministerio Público podrá presentar prueba de refutación, luego de finalizada la prueba del acusado. No obstante, el Ministerio Público no podrá presentar prueba que debió traer durante el desfile inicial de su prueba. **Luego de presentada la prueba de refutación**, la persona acusada podrá presentar prueba de contra refutación. (Énfasis nuestro) Nuestro Tribunal Supremo ha resuelto que la impugnación de los testigos es uno de los mecanismos más eficaces para lograr el principio cardinal de nuestro sistema de justicia que es el descubrimiento de la verdad. El propósito de la prueba de impugnación es menoscabar la credibilidad de los

---

[37] *Pueblo* v. *Figueroa Rosa,* 112 DPR 154, 158-161 esc. 3 (1982).
[38] 34 LPRA sec. 145.

testigos y no puede utilizarse como subterfugio para introducir evidencia que de otra forma no podía ser admitida. La impugnación por contradicción es simplemente para atacar instancias específicas de un testimonio con el objetivo de demostrar que lo declarado es falso, inexacto, poco probable o erróneo. El principio cardinal es que la prueba de impugnación contradiga lo declarado por el testigo frente al juzgador de los hechos.[39]

### III

La apelante discutió conjuntamente los dos primeros señalamientos de error en los que alegó que **el TPI no instruyó al jurado sobre la posesión incidental del uso de un arma de fuego y sobre los delitos menores incluidos en el asesinato en primer grado.** Su representación legal argumentó que la Juez que presidio los procedimientos instruyó a las partes a realizar las solicitudes de instrucciones al jurado en su oficina. Argumentó que la solicitud de instrucciones al jurado no consta en la transcripción por el hecho de que la mayoría de los planteamientos y objeciones se tenían que exponer en el estrado para no excusar al jurado. Arguyó que el TPI impartió instrucciones únicamente en torno al delito de asesinato en primer grado, a pesar de haber solicitado instrucciones sobre el delito de asesinato atenuado y posesión incidental de arma de fuego. La apelante sostuvo que el veredicto pudo ser distinto, si el tribunal no se hubiese equivocado en las instrucciones que le dio al jurado.

El Procurador General alegó que la representación legal de la apelante no objetó oportunamente las instrucciones al jurado conforme la Regla 137 de Procedimiento Criminal,[40] y que, por el contrario, estuvo de acuerdo con estas según se desprende de la

---

[39] *Berríos Falcón* v. *Torres Merced,* 175 DPR 962, 975 (2009).
[40] 34 LPRA Ap. II, R. 137.

Minuta del 3 de mayo de 2022. Por otro lado, el Procurador argumentó que las instrucciones sobre la posesión incidental de un arma de fuego no eran necesarias, porque fueron incluidas en la instrucción sobre el síndrome de la mujer maltratada. Además, adujo que no se sostienen, porque el jurado concluyó que la apelante no actuó en legítima defensa. El apelado arguyó que el tribunal no tenía que instruir al jurado sobre el delito comprendido de asesinato atenuado, porque el Ministerio Fiscal evidenció que la apelante cometió el delito de asesinato en primer grado.

Evaluada la transcripción y los autos del caso, concluimos que el TPI no cometió los dos primeros señalamientos de error. La apelante cuestiona las decisiones que el foro primario tomó en el estrado sobre las instrucciones al jurado. No obstante, la defensa no nos colocó en posición de pasar juicio sobre las discusiones y objeciones en el estrado sobre las instrucciones al jurado ante su incumplió con lo establecido en *Pueblo v. Ortiz Colón, supra.* La representación legal de la apelante no expuso en corte abierta para que constara en la grabación del tribunal su solicitud de instrucciones al jurado y los fundamentos de sus objeciones que alegó expuso en el estrado. Su representación legal pasó por alto que las conversaciones en el estrado no son parte de la transcripción y falló al no plantear en corte abierta su interés de preservarlas en el récord. Es por ello, que no hay constancia en la transcripción que los abogados de defensa hayan cuestionado las instrucciones que recibió el jurado y que ahora cuestiona en apelación. Por el contrario, consta de la transcripción que los representantes de la apelante certificaron que estaban conforme con las instrucciones impartidas al jurado. Es evidente que la

defensa renunció a plantear en apelación cualquier error u omisión en las instrucciones impartidas al jurado.[41]

La apelante sostuvo **en el tercer señalamiento de error que el TPI violó su derecho al debido proceso de ley y a una representación legal adecuada.** La apelante alegó que el foro apelado continuó el juicio, a pesar de la incomparecencia justificada de uno de sus abogados. Su representación legal argumentó que el Lcdo. Alma Rozada se ausentó justificadamente, debido al fallecimiento de su abuela. No obstante, adujo que el TPI no suspendió el caso y obligó al Lcdo. Ramos Gil a asumir en pocas horas el trabajo del Lcdo. Alma Rozada. La apelante sostuvo que la decisión del TPI violó su derecho a una representación legal adecuada en una etapa avanzada del caso.

El Procurador General argumentó que el tribunal le dio una tarde al Lcdo. Ramos Gil para instruirse con el Lcdo. Alma Rozada sobre las preguntas que debía hacerle a los testigos. No obstante, indicó que el Lcdo. Ramos realmente tuvo dos (2) días para prepararse para el interrogatorio y contrainterrogatorios de los testigos, ya que desde el 25 de abril de 2022 conocía del fallecimiento de la abuela del Lcdo. Alma Rozada y que éste no asistiría al juicio el 27 de abril de 2022. El apelado alegó que el propio Lcdo. Ramos Gil reconoció que no llamó al Lcdo. Alma Rozada, porque estaba pasando el duelo de la muerte de su abuela. Además, argumentó que la muerte de su abuela no eximió al Lcdo. Alma Rozada de cumplir sus obligaciones como abogado. El apelado le atribuyó al Lcdo. Alma Rozada la responsabilidad de comunicarse con el Lcdo. Ramos Gil para informarle y orientarle sobre cómo interrogar y contrainterrogar a los testigos. Por último,

---

[41] Véase *Transcripción de Juicio*, pág. 429, líneas 1-9 (vista el 3 de mayo de 2022).

alegó que la apelante tampoco demostró el grado de perjuicio que le causó la ausencia del Lcdo. Alma Rozada.

Según consta en los autos originales, el 27 de abril de 2022, el Lcdo. Ramos Gil informó verbalmente el fallecimiento de la abuela del Lcdo. Alma Rozada. El Lcdo. Ramos Gil pidió la suspensión del juicio durante los días del velatorio y entierro y la continuación en las fechas calendarizadas para imprevistos. El abogado de la apelante argumentó que la comparecencia de Lcdo. Alma Rozada era imprescindible para la defensa, porque ambos se dividieron las tareas y el interrogatorio de los testigos. El TPI denegó la suspensión, porque la acusada tenía dos abogados y el tribunal le concedió una tarde al Lcdo. Ramos Gil para que se comunicara con el Lcdo. Alma Rozada. La defensa pidió infructuosamente reconsideración por escrito.

El TPI no cometió el tercer señalamiento de error, porque no violó el derecho de la apelante a una representación legal adecuada. La apelante no probó que la determinación del foro apelado limitó irrazonablemente su derecho a una representación legal adecuada. El Lcdo. Alma Rozada tenía la obligación de instruir a su compañero de defensa sobre el trabajo que tenía asignado. Los asuntos personales no le eximían de cumplir con su obligación de proveer una representación legal adecuada a su cliente. Tal obligación tiene mayor relevancia en un caso en el que la cliente está acusado del delito de asesinato de primer grado. Por otro lado, no podemos pasar por alto que el tribunal le dio oportunidad al Lcdo. Ramos Gil de comunicarse con el Lcdo. Alma Rozada para que lo orientara sobre cómo interrogar y contrainterrogar a los testigos. No obstante, el Lcdo. Ramos Gil decidió darle espacio al Lcdo. Alma Rozada, porque estaba pasando por un proceso de duelo. Por último, y más importante aún, la apelante no estableció el perjuicio sustancial que le ocasionó la

continuación del juicio durante el día que el Lcdo. Alma Rozada se ausentó por el funeral de su abuela.

**La apelante adujo que el TPI erró al no ordenar una investigación del jurado, a pesar de que la prensa y el Ministerio Público informaron que uno de sus miembros expresó inconformidad con el veredicto.**

El Procurador General alegó que la apelante no presentó evidencia prima facie sobre irregularidades que viciaran el veredicto de culpabilidad. Según el apelado, las alegaciones de la apelante son especulativas, hipotéticas e imaginarias y basadas en una presunta información y en rumores mediáticos que no corroboró.

Los autos originales evidencian que la apelante solicitó al TPI investigar al jurado. Sus abogados alegaron que la prensa reportó que supuestamente uno de sus miembros expresó que el jurado recibió presión indebida durante el proceso deliberativo. El Ministerio Fiscal se opuso, porque la solicitud se basó en especulaciones y no en hechos específicos. Además, invocó la presunción de regularidad que cobija al proceso deliberativo y la presunción de que el veredicto está basado en la prueba y no en hechos extraños. Según el Ministerio Público, la defensa no derrotó esas presunciones y no puso al tribunal en conocimiento de las razones por las que la decisión del jurado debía ser investigada.

El foro apelado denegó la solicitud de investigar el jurado mediante Resolución del 15 de junio de 2022. El TPI sostuvo que el 3 de mayo de 2022, a tenor la Regla 151 de Procedimiento Criminal corroboró con los y las miembros del jurado si el veredicto rendido y leído era su sentir y estaba correcto; cada miembro del jurado contestando en la afirmativa. El foro primario hizo hincapié en que: (1) observó el movimiento de cabeza de cada uno de los miembros del jurado y su lenguaje corporal, en el

momento en que les preguntó sobre la corrección del veredicto, (2) nada levantó dudas sobre el veredicto y la forma en que el jurado llegó al mismo, (3) ninguna de las partes objetó el método de corroboración que usó el tribunal, ni solicitó la corroboración de otra forma, (4) la corroboración del veredicto se realizó a instancias del tribunal en su descargo ministerial de velar y constar que no medió coacción del jurado, (5) durante el mes y los tres días que transcurrieron desde el veredicto hasta la sentencia, no se alegó incomodidad de algún miembro del jurado y (6) los alguaciles no informaron ningún incidente entre los miembros del jurado.

El TPI manifestó que conforme la Regla 141 de Procedimiento Civil instruyó al jurado que debían requerir de los alguaciles a cargo que los condujeran al Tribunal si surgían dudas o desacuerdos entre ellos sobre la prueba testifical al momento de deliberar. También se les instruyo sobre notificar a los alguaciles a cargos para ser conducidos al Tribunal si tenían duda, aunque no fuera de la prueba, o si necesitaban aclarar algún punto de derecho. Indicó que no surgió incidente alguno entre los miembros del jurado que fuera informado por los alguaciles, salvo la aclaración de una definición legal. Asimismo, el foro apelado se preguntó el por qué un miembro del jurado llamaría a la fiscalía, y no a los abogados de la defensa cuando el veredicto afectó a la defensa. El TPI determinó que la investigación no se justificaba, porque la apelante no alegó afirmativamente ni demostró que un miembro del jurado recibió presiones externas que viciaron la deliberación. Se determinó que no procedía autorizar una investigación o llevar a cabo entrevista para saber cómo el jurado voto unánime a base de especulaciones y que ello conllevaría una violación a la naturaleza secreta del proceso de deliberación.

El cuarto señalamiento de error no se cometió. La solicitud de investigación al jurado está basada en una información

obtenida por la prensa. La representación legal de la apelante alegó que la prensa les preguntó sobre las expresiones que hizo un miembro del jurado de que durante el proceso deliberativo ocurrió una presión indebida. Las alegaciones de la apelante son insuficientes para violentar la confidencialidad que cobija el proceso deliberativo del jurado, debido a que están basadas en especulaciones y en información de la prensa que no fue corroborada. La apelante no estableció de forma prima facie que ocurrió una anormalidad que afectó seriamente la realización de la justicia y el esclarecimiento de la verdad. Por esa razón, no se justifica violentar la confidencialidad del proceso deliberativo del jurado.

**La apelante alegó en el quinto señalamiento de error que, el TPI se equivocó al no permitirle obtener el expediente de querellas administrativas del occiso, a pesar de que su defensa adelantó que el caso estaría basado en prueba de reputación. La representación legal de la apelante adujo que el expediente de querellas administrativas del occiso era esencial para el análisis pericial sobre la defensa de la mujer maltratada.**

El apelado argumentó que la apelante no demostró la necesidad y pertinencia de las querellas administrativas del occiso, ni de la información sobre los sitios en los que trabajó. Además, argumentó que la defensa nunca presentó el informe pericial para el cual pidió esa prueba.

Según consta en los autos originales, en específico, en la minuta de la vista del 20 de agosto de 2021, que la apelante pidió descubrir el expediente de querellas administrativas del occiso, porque "*es pertinente porque en otros casos la han provisto*" y "*en la vista preliminar la prueba fue de carácter*". Posteriormente, la defensa de la apelada alegó que dicha prueba era pertinente porque "*la acusada de epígrafe y el occiso estaban casados, dentro*

*de las conversaciones conyugales s[e] pudieron tocar temas de cuando el occiso era policía*", [...].[42]

El Ministerio Fiscal alegó que la prueba solicitada era confidencial, impertinente y de tiempo muy remoto, porque hacía 8 años que el occiso se había retirado de la Policía de Puerto Rico. Asimismo, alegó que era improbable y especulativo que el occiso y la acusada en sus dos meses de matrimonio antes del asesinato, hubieran tenido una conversación sobre temas relacionados a cuando la víctima era agente de la policía. Planteó que, en el supuesto de que hubiera existido tal conversación, la acusada las conocería y no tendrían que acudir en una expedición de pesca a los expedientes administrativos de la Policía.

El TPI denegó la solicitud de descubrimiento de prueba, porque estaba basada en especulaciones y la acusada no demostró que era pertinente.[43] El foro apelado advirtió que la defensa no especificó qué actos pretendía descubrir y concluyó que la prueba solicitada era de tiempos muy remotos a los hechos. Por último, señaló que la representación legal de la apelante no expresó, formalmente y de forma definitiva, que invocaría la defensa del síndrome de la mujer maltratada.

El foro apelado no cometió el quinto señalamiento de error. La prueba que la apelante pretendía descubrir no está identificada en el listado de la Regla 95 de Procedimiento Criminal.[44] Por esa razón, su representación legal estaba obligada a establecer o a explicar la necesidad de descubrir prueba de las querellas administrativas del occiso y de los lugares en que trabajó. La

---

[42] Véase, la *Moción al amparo de la R-95 de Procedimiento Criminal y el Debido Proceso de Ley* radicada por la defensa de la apelada el 17 de marzo de 2021 y la *Moción para que se ordene entrega de documentos al amparo de la R-95 de Procedimiento Criminal y el debido proceso de Ley* del 30 de agosto de 2021.
[43] Véase, Resolución del 23 de septiembre de 2021.
[44] 34 LPRA Ap. II, R. 95.

representación legal de la apelante, en este caso, no estableció la pertinencia de esa prueba para la defensa. Se limitó a alegar que era pertinente, debido a se entregaba dicha documentación en otros casos; y que pudo haber acontecido una conversación entre el occiso y la acusada sobre temas de cuando este era policía. Luego de la denegatoria por el foro primario y como parte de una solicitud de extensión para radicar el informe pericial de la defensa, planteó que requería copia de las querellas administrativas, ya que fueron solicitadas por su perito. [45]

Por último, la apelante cuestionó que el TPI no le permitió presentar prueba de refutación pericial con el propósito de contrarrestar las alegaciones del patólogo forense. Su representación legal adujo que el testimonio de la Dra. Yocasta Brugal era esencial para refutar el testimonio del perito del Estado de que el occiso dormía cuando recibió el disparo.

El Procurador General adujo que la apelante no podía traer prueba de contra refutación, porque el Ministerio Público presentó el testimonio del perito forense **como prueba de cargo y no de refutación**. El apelado argumentó que la prueba de refutación es para refutar lo que se desconocía que la otra parte iba a presentar. El Procurador sostuvo que es imposible que la apelante desconociera que el testimonio del perito forense iba dirigido a demostrar que la víctima dormía, cuando recibió el disparo. El apelado adujo que la defensa intentó utilizar la Regla 607 (e),[46] para traer la prueba pericial que anunció tardíamente como si fuera de refutación. No obstante, alegó que la intención de la defensa era realmente impugnar la credibilidad del perito forense.

---

[45] Véase, Moción al amparo del debido proceso de ley del 20 de enero de 2022 y la Minuta del 24 de enero de 2022.
[46] 32 LPRA Ap VI, R. 607.

Según la Minuta del 29 de abril de 2022, el tribunal se reunió con las partes en el estrado. Posteriormente, hizo constar para récord que la defensa pidió que se le permitiera traer un testigo pericial adicional. El Ministerio Fiscal objetó sus argumentos. El tribunal declaró No Ha Lugar la petición al amparo de la Regla 403 (d) de Evidencia,[47] porque permitir el testimonio causaría una dilación innecesaria en el caso que se encuentra en su etapa final.[48]

El TPI no cometió el sexto señalamiento de error. La apelante cuestiona nuevamente una decisión que se discutió en el estrado. No obstante, reafirmamos que su propia defensa nos cerró las puertas para evaluar las discusiones y objeciones en el estrado, ya que incumplió con lo establecido en *Pueblo* v. *Ortiz Colón, supra,* porque no expuso en sala abierta su interés de verter para el récord lo conversado en el estrado sobre la admisibilidad del testimonio de la Dra. Yocasta Brugal. Por otro lado, coincidimos con el Procurador General, en que la defensa trató de traer como prueba de contra refutación una prueba pericial que no fue debidamente anunciada. La Regla 607 (6) de Evidencia, *supra,* establece que la acusada podrá presentar prueba de contra refutación, luego de que el Ministerio Público presente su prueba de refutación. El Ministerio Público solamente podrá presentar prueba de refutación luego de finalizada la presentación de prueba por la acusada. Según consta de los autos, el Ministerio Público presentó el testimonio del Dr. Chávez como prueba de cargo para establecer que la victima estaba durmiendo al momento en que fue disparado. De la parte apelada haber interesado utilizar el testimonio de la Dra. Yocasta Brugal para establecer un hecho esencial de su teoría del caso o contradecir los hallazgos del Dr.

---

[47] *Id.* R. 403.
[48] Véase, Minuta del 29 de abril de 2022.

Chávez tenía una obligación de anunciarla durante el descubrimiento de prueba y previo a la celebración del juicio en su fondo.

La representación legal de la apelante se circunscribió a alegar errores de estricto derecho que no fueron cometidos. Su representación legal no cuestionó la apreciación de la prueba y la adjudicación de credibilidad del jurado. Ante ese escenario, confirmamos el veredicto del jurado y la sentencia apelada.

**IV**

Por lo antes expuestos, se **confirma** la sentencia apelada.

Notifíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones